**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:21CV95 HEA** |
| ) | |
| **THE WASHINGTON UNIVERSITY,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief May be Granted, [Doc. No. 18]. Plaintiff opposes the Motion and has filed a Memorandum in Opposition, to which Defendant has filed a Reply.  For the reasons set forth below, the Motion is granted in part and denied in part.

Plaintiff asserts the following causes of action: violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* Plaintiff alleges in Count I that she is a member of a protected class, as an individual who is of Egyptian and Arab ethnic heritage and whose Muslim faith functions as a proxy for that heritage. Further alleged in Count I is that Defendant treated Plaintiff in a discriminatory

manner and that her race, color and/or national origin were the motive for Defendant's discriminatory conduct.

In Count II, Plaintiff alleges a breach of contract. Plaintiff claims in exchange for the payment of tuition, she enrolled in a course of study that would lead to the conferment of a law degree. This alleged contract included the Honor Code, to which Plaintiff and Defendant were required to comply. Plaintiff also alleges the contract between Plaintiff and Defendant included an implied covenant of good faith and fair dealing. Plaintiff claims Defendant breached the contract by failing to make a timely determination whether to prosecute Honor Code violations against Plaintiff within 10 days of receiving a referral; by failing to provide timely notice; by issuing a charging document that was vague, speculative, conclusory, and unspecific as to the acts or omissions constituting cheating and actionable plagiarism; by denying Plaintiff the opportunity to present key evidence of a pattern of discrimination against female Muslim students n investigatory and disciplinary proceedings; by essentially presuming Plaintiff knowingly and intentionally copied and used the work from another student's brief and subsequently concluding Plaintiff was unable to adequately explain the supposed similarities in the briefs. Plaintiff also alleges a violation of the implied duty of good faith and fair dealing by not following the due process inherent in the Honor Code's assurance to promote and secure academic integrity, fairness, equal

2

academic opportunity, and professionalism at the School of Law. These alleged

breaches include: a. Defendant launched its investigation and prosecution against

Plaintiff only after learning her identity as a Muslim-American; b. Defendant did

not require Kyle Summerville, a member of the Investigative Team and Case

Presentation Team, to recuse himself from either the investigation or the

prosecution, despite the conflict of interest that became apparent during

his investigational interview of Plaintiff; c. Defendant had the advantage of

compulsory process to ensure the cooperation of Professor Moul, Student No.

6298, and others, including Plaintiff herself, during the investigation and

prosecution. Plaintiff had no comparable right or remedy when Professor Moul and

Student No. 6298 refused to participate in an interview, conducted by counsel,

prior to the hearing. Plaintiff had no recourse when one of the students previously

accused or others refused to appear as witnesses at the hearing; d. Defendant,

acting by and through the Case Presentation Team, undermined the integrity of the

hearing when it shared with the Hearing Panel, the day before the hearing,

prejudicial, unadmitted evidence in the form of Professor Norwood's

opinion about the ultimate question in the case.

## Standard of Review

A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to satisfy this

requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

"If, on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). However, the motion to dismiss is not automatically converted to a motion for summary judgment just because a party submits additional matters in support or opposition to the motion.

4

*Gorog v. Best Buy Co., Inc.*, 760 F.3d. 787, 791 (8th Cir. 2014). The motion should not be converted to summary judgment if the matters submitted were excluded by the Court or if the matters were "necessarily embraced by the complaint." *Id.*; *see also Ashford*, 880 F.3d at 992 ("When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.") (Quoting *Smithrud*, 746 F.3d at 395).

## Discussion

### Count I-Title VI

Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To plead a plausible Title VI claim, the plaintiff must allege facts that show plaintiff's race, color, or national origin motivated a defendant's discriminatory conduct. *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 355 (8th Cir. 2020). Plaintiff must allege: (1) she is a member of a protected class; (2) she experienced an adverse action by Defendant in pursuit of her education; (3) she was qualified to continue her studies; and (4) in taking the adverse action, Defendant treated her

differently from similarly situated students outside her protected class. *Id.* In

*Rowles*, the plaintiff's Title VI claim survived a motion to dismiss by including

allegations that a defendant "told him in a prior investigation that he looked like

someone who might commit sexual assault"; "a forthcoming law review article

posited that the University's enforcement of Title IX 'likely' discriminates against

African-Americans"; "on information and belief, a statistical analysis of Title IX

sanctions imposed by the University over the last several years will show a pattern

and practice of selective enforcement against male students"; and alleging the

plaintiff "would have been treated less harshly if he were a white Ph.D. candidate."

*Id.*, 983 F.3d at 353.

The Complaint asserts a claim that Defendant discriminated against Plaintiff

based on her race, color and/or national origin, under the well-established implied

private right of action for alleged violations of Title VI, which prohibits

discrimination on the basis of race, color, or national origin in federally funded

programs. The foundation for this claim is that Defendant treats white individuals

more favorably in the investigation of violations of the Honor Code. This claim

requires proof of intentional or purposeful discrimination. *See Alexander v.*

*Sandoval*, 532 U.S. 275, 280 (2001) (Title VI). To prove Defendant's

discriminatory intent, Plaintiff must establish "that [she was] treated differently

from others similarly situated." *See Rowles*, 983 F.3d 345, 355 (8th Cir. 2020)

(Title VI prima facie case requires showing that plaintiff was "treated differently from similarly situated students outside his protected class").

Alleged comparators must be "similarly situated in all relevant aspects." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 797 (8th Cir. 2011). "'In a case of alleged discriminatory discipline, such as this, [Plaintiff] must [plausibly plead] that the acts of other[s] ... who were not disciplined or were disciplined less severely were of "comparable seriousness" to [her] infraction." *Russell v. City of Kan. City*, 414 F.3d 863, 868 (8th Cir. 2005) (citation omitted)." *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 580 (8th Cir. 2021).

The Complaint alleges Plaintiff received a high grade in Professor Moul's class and it was only after Professor Moul discovered Plaintiff was an Egyptian-American Muslim that Professor Moul remembered a paper that gave her a "vague sense" that she had encountered some things in it that were a little quirky at some point before; a similar situation occurred with other Muslim students in which Professor Moul was involved; Student 6298 is Caucasian; Student 6298 was similarly situated to Plaintiff because it is alleged that Professor Moul compared Plaintiff's brief with Student 6298's brief; Student 6298 was encouraged to be creative with how Plaintiff may have accessed her brief; Plaintiff was required to testify in person while Student 6298 only submitted a brief email statement and was never interviewed by the Investigative Committee by phone or in person;

following the email statement, the investigation against Student 6298 was immediately dropped; the faculty advisor to the Investigative Committee testified at the hearing that she did not know of or read the charges against Plaintiff, but merely signed off; all of Plaintiff's motions were denied, but the motion in limine filed by the Investigative team was granted; a member of the Investigative Committee team was also a member of the Prosecution team; the Presentation team presented no evidence of any actual act constituting cheating or actionable plagiarism; Plaintiff's witnesses collectively testimony cast doubt that Plaintiff in any way perpetrated acts of cheating or plagiarism; Plaintiff's witnesses cast significant doubt that Plaintiff's and Student 6298's respective briefs were as different from other students' briefs as Professor Moul insisted; Professor Moul testified she shredded Plaintiff's outline, which was submitted during their in person meeting before the brief was submitted, a month after the initial investigation, despite it being the customary practice for professors to retain such student materials for at least a semester; Professor Moul testified she did not use a plagiarism software because she would get false positives because all the students had the same limited number of references; four of Plaintiff's classmates testified they had similar passages and citations as Plaintiff and Student 6298; Student 6298 testified she had no evidence of Plaintiff being alone with her and that Plaintiff did not have access to Student 6298's phone, computer or any discarded drafts or

copies of her final paper; this testimony was substantiated by the four other classmates; the sanction imposed on Plaintiff was harsher than 15 other cases involving similar allegations of misconduct; Plaintiff was penalized for defending herself in the hearing, *i.e.*, was assessed a "trial tax."

Defendant argues Plaintiff does not present any facts to show any student subject to an Honor Code investigation and hearing involving the same or similar facts was treated differently. However, the fact that no other student was subjected to an Honor Code hearing is precisely the basis of Plaintiff's claim.  Plaintiff's allegations set forth that Student 6298 was similarly situated, however, Student 6298 was not subject to a hearing. Student 6298 was advised to be creative in trying to find out how Plaintiff copied her brief. There was no evidence that Plaintiff was able to gain access to Student 6298's brief. The investigation into Student 6298's actions was dismissed after merely an email explanation whereas, the investigating into Plaintiff's actions was carried out to a finding of a violation of the Honor Code and imposition of a sanction.

Defendant focuses on Plaintiff's summarization of the claim rather than the specific factual allegations set out to state Plaintiff's claim.  As the above discussion demonstrates, taking the allegations as true, Plaintiff has set forth sufficient detail to notify Defendant of the claim and the grounds therefore. Plaintiff does not merely rely on the conclusory statements that Student 6298 was

involved, and the great amount of evidence presented at the hearing.  Plaintiff

details each step of the beginning of the investigation after Professor Moul

discovered Plaintiff's race, color and ethnic background through the final sanction

that was impose on only one other person in the 16 other cases involving similar

misconduct.  At this stage of the proceeding, Plaintiff is not required to prove her

case, as Defendant seems to suggest, (without pleading facts to show what

information the Investigative Team relied on in reaching its charging decision,

Plaintiff cannot show that she is similarly situated to Student 6298). Plaintiff

claims that because she was subjected to the Investigation through the final

decision and Student 6298 was not, she was targeted based on her race, color

and/or ethnic background.  Whether Plaintiff can prove these allegations remains

to be determined through discovery. The current motion challenges the sufficiency

of the Complaint. The details set forth in the Complaint are sufficient to set forth a

plausible claim.  The motion will be denied as to Count I.

**Breach of Contract**

To state a claim for breach of contract under Missouri law, [a plaintiff] must

establish the existence of a valid contract, *the rights of plaintiff and obligations of

defendant under the contract*, a breach by defendant, and damages resulting from

the breach." *Gillis v. Principia Corp*., 832 F.3d 865, 871 (8th Cir. 2016) (emphasis

in original) (citing *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct.

App. 2013)); *Hughes v. Missouri Baptist Univ.*, No. 4:19-CV-02373-AGF, 2021
WL 2042264, at *12 (E.D. Mo. May 21, 2021).

Under Missouri law, a student's enrollment at a university does not create a
contractual relationship. *See Lucero*, 400 S.W.3d at 5; *see also Nickel v. Stephens
College*, 480 S.W.3d 390, 398 (Mo. App. W.D. 2015). "[I]n order to assert a
breach of contract claim against a university, a student plaintiff must point to an
identifiable contractual promise that the [university] defendant failed to honor."
*Lucero*, 400 S.W.3d at 5; *Doe v. Washington Univ.*, No. 4:21-CV-00205-SRC,
2021 WL 4504387, at *6 (E.D. Mo. Sept. 30, 2021). This means " 'the complaint
must, at minimum, cite the contractual provision allegedly violated. Generalized
allegations of a contractual breach are not sufficient.' " *Gillis*, 832 F.3d at 872 n.11
(quoting *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, No. CIV. 11-
2061 RHK/FLN, 2012 WL 3430447, at *3 (D. Minn. Aug. 14, 2012) ); *Yousaf v.
Curators of Univ. of Missouri*, No. 4:18-CV-00321-DGK, 2019 WL 1320062, at
*3 (W.D. Mo. Mar. 22, 2019).

Plaintiff claims the Honor Code and other brochures, policy manuals and
advertisements make up the terms of the contract upon which her breach of
contract claim rests.  As defendant correctly argues, no Missouri court has
concluded that a contractual relationship is created between a student and a
university.  *Lucero*, 400 S.W.3d at 4-5, and the fact that the Honor Code may be

modified without Plaintiff's approval takes it outside the realm of enforceable contract. "The ability to unilaterally alter the terms of a contract makes the contract unenforceable. *See Baker v. Bristol Care, Inc.,* 450 S.W.3d 770, 776–77 (Mo. banc 2014); *see also Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662–63 (Mo. banc 1988) (an employee handbook which was unilaterally prepared by an employer, and subject to change by the employer at any time, did not establish enforceable contractual rights); *Jennings v. SSM Health Care St. Louis,* 355 S.W.3d 526, 533–34 (Mo.App.E.D. 2011) (same)." *Nickel v. Stephens Coll.*, 480 S.W.3d at 397. Count II of Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## Conclusion

Based upon the foregoing analysis, Defendant's Motion to Dismiss will be denied as to Count I and granted as to Count II.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 18], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count II of Plaintiff's Complaint is

**DISMISSED**.

Dated this 11th day of February, 2022.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE